# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

ANTHONY CAMARCA

*Plaintiff-Appellant,*

v.

CITY OF COVINGTON, KY POLICE DEPARTMENT; OFFICER ROSS WOODWARD; OFFICER ROBERT CHRISTEN; OFFICER BRADLEY MORRIS; OFFICER SAMUEL MATHEWS; SERGEANT MICHAEL GILLILAND

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

**BRIEF FOR THE APPELLANT**

*/s/ Donald L. Nageleisen*
Donald L. Nageleisen, Esq.
2216 Dixie Highway, Suite 203
Fort Mitchell, Kentucky 41017
(859) 491-8887
dlnlegalmail@yahoo.com
*Counsel for Appellant, Anothony Camarca*

## **CORPORATE DISCLOSURE**

Pursuant to Federal Rule of Appellate Procedure and Sixth Circuit Rule 26.1, counsel for Appellant certifies that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ii

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES..............................................................................vi

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................xi

STATEMENT OF JURISDICTION ...................................................................1

STATEMENT OF ISSUES...............................................................................1

STATEMENT OF THE CASE ..........................................................................2

    A. STATEMENT OF THE FACTS ...............................................................2

    B. COURSE OF PROCEEDINGS
       AND DISPOSITION IN THE
       COURT BELOW .................................................................................8

    C. STANDARD OF REVIEW ...................................................................10

SUMMARY OF THE ARGUMENT.................................................................11

ARGUMENT .............................................................................................15

I. THE DISTRICT COURT ERRED WHEN GRANTING
    SUMMARY JUDGMENT ON PLAINTIFF'S § 1983
    CLAIMS AGAINST THE DEFENDANT OFFICERS...............................17

    A. Defendants Woodward And Christen Did Not Have
       Reasonable Suspicion or Probable Cause to Detain
       And Arrest Plaintiff. ..........................................................................17

B.   Defendants Woodward And Christen Used Excessive Force Upon Plaintiff When They Detained And Arrested Plaintiff. ...................................................22

    1.   Defendant Woodward's Slam of Mr. Camarca Into the Wall Constitutes Excessive Force.. ..............................26

        i.   Mr. Camarca Was Not Suspected of a Serious or Violent Offense....................................27

        ii.   Mr. Camarca Did Not Pose an Immediate Threat to Officers or Others. ..............................27

        iii.   Mr. Camarca Did Not Actively Resist Arrest....................................................30

    2.   Defendant Woodward and Christen's Takedown and Subsequent Forces on The Ground of Mr. Camarca Constitute Excessive Force. ...........................................32

    3.   Defendant Woodward's Throwing a Compliant And Injured Mr. Camarca Head-First to The Wall Constitutes Excessive Force. .........................38

    4.   Defendants Woodward and Christen Forcing Mr. Camarca to Walk And Hop With His Injured Leg While Being Told of His Injury Constitutes Excessive Force. .......................41

C.   Defendants Gilliland, Morris, And Mathews Failed to Intervene in Defendant Woodward And Christens' Unlawful Detention, Arrest, And Excessive Force. ...........43

D.   Defendant Officers Denied Plaintiff of His Right to Equal Protection And Due Process of The Law....................45

E.   Defendant Officers Are Not Shielded by Qualified Immunity. ..........................................................46

II.     THE DISTRICT COURT ERRED WHEN GRANTING
        SUMMARY JUDGMENT ON PLAINTIFF'S § 1983
        CLAIMS AGAINST THE DEFENDANT CITY AND
        OFFICERS IN THEIR OFFICIAL CAPACITY. ........................................49

III.    THE DISTRICT COURT ERRED WHEN GRANTING
        SUMMARY JUDGMENT ON PLAINTIFF'S STATE
        LAW CLAIMS. ...........................................................................................51

CONCLUSION ...................................................................................................52

CERTIFICATE OF COMPLIANCE ....................................................................53

CERTIFICATE OF SERVICE..............................................................................53

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............54

# TABLE OF AUTHORITIES

**Page(s)**

**UNITED STATES SUPREME COURT CASES**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ............................................................................... 10

City of Canton, Ohio v. Harris,
489 U.S. 378 (1989) ........................................................................ 17, 50

Graham v. Connor,
490 U.S. 386 (1989) ....................................................................... *passim*

Harlow v. Fitzgerald,
457 U.S. 800 (1982) ............................................................................... 46

Hope v. Pelzer,
536 U.S. 730 (2002) ............................................................................... 49

Monell v. Dep't of Social Servs.,
436 U.S. 658 (1978) ...................................................... 8, 14, 16, 17, 49

Rivas-Villegas v. Cortesluna,
142 S. Ct. 4 (2021) (per curiam) ........................................................ 47

Scott v. Harris,
550 U.S. 372, 378 (2007) ................................................................ 10, 11

West v. Atkins,
487 U.S. 42 (1988) ................................................................................. 15

**UNITED STATES COURT OF APPEALS CASES**

Adams v. Metiva,
31 F.3d 375 (6th Cir. 1994) .................................................................. 48

Browning v. Edmonson Cnty., Kentucky,
18 F.4th 516 (6th Cir, 2021) .......................................................... 15, 51

Center for Bio-Ethical Reform, Inc. v. Napolitano,
648 F.3d 365 (6th Cir. 2011) ...................................................45

Coley v. Lucas County,
799 F.3d 530 (6th Cir. 2015) ...................................................49

Comstock v. McCrary,
273 F.3d 693 (6th Cir. 2001) ...................................................46

D'Ambrosio v. Marino,
747 F.3d 378 (6th Cir. 2014) ...................................................49

Darnell v. Caver,
No. 97-5297, 1998 U.S. App. LEXIS 15390
(6th Cir. 1998) ...................................................42

Eldridge v. City of Warren,
533 F. App'x 529 (6th Cir. 2013) ...................................................36, 37

Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,
455 F.3d 690 (6th Cir. 2006) ...................................................50

Grawey v. Drury,
567 F.3d 302 (6th Cir. 2009) ...................................................30, 33

Harris v. City of Circleville,
583 F.3d 356 (6th Cir. 2009) ...................................................48

Harris v. Langley,
647 F. App'x 585 (6th Cir. 2016) ...................................................47

Hernandez v. Boles,
949 F.3d 251 (6th Cir. 2020) ...................................................25

Jacobs v. Vill. Of Ottawa Hills,
5 F. App'x 390 (6th Cir. 2001) ...................................................44

Jerauld ex rel. Robinson v. Carl,
405 F. App'x 970 (6th Cir. 2010) ...................................................46

Keith v. County of Oakland,
703 F.3d 918 (6th Cir. 2013) .................................................................10

Kent v. Oakland Cnty.,
810 F.3d 384 (6th Cir. 2016) ..................................................................28

Kijowski v. City of Niles,
372 F. App'x 595 (6th Cir. 2010) ............................................................48

King v. City of Rockford,
97 F.4th 379 (6th Cir. 2024) ........................................................28, 29, 36

Kowolenek v. Moore,
No. 10-5398, 2012 U.S. App. LEXIS 3843
(6th Cir. February 23, 2012)..............................................................13, 44

La Plante v. City of Battle Creek,
30 F.4th 572 (6th Cir. 2022) ...................................................................36

Lawler v. City of Taylor,
268 F. App'x 384 (6th Cir. 2008) ......................................................47, 48

Lowe v. Walbro LLC,
972 F.3d 827 (6th Cir. 2020)...................................................................10

McDowell v. Rogers,
863 F.2d 1302 (6th Cir. 1988)...........................................................48, 49

Ontha v. Rutherford County,
222 Fed. Appx. 498 (6th Cir. 2007) .........................................................42

Osborn v. City of Columbus,
No. 22-3570, 2023 U.S. App. LEXIS 6264
(6th Cir. March 15, 2023)..............................................................*passim*

Ouza v. City of Dearborn Heights, Michigan,
969 F.3d 265 (6th Cir. 2020)...................................................................50

Rudlaff v. Gillispie,
791 F.3d 638 (6th Cir. 2015)............................................................11, 28

Saunders v. Ford Motor Co.,
879 F.3d 742 (6th Cir. 2018) .................................................................10

Sevenski v. Artfitch,
Nos. 21-1391/1402, 2022 U.S. App. LEXIS 20108
(6th Cir. July 20, 2022) ........................................................................36

Shreve v. Jessamine Cnty. Fiscal Ct.,
453 F.3d 681 (6th Cir. 2006) .................................................................26

Shumate v. City of Adrian,
44 F.4th 427 (6th Cir. 2022) ..........................................................*passim*

Sigley v. City of Parma Heights,
437 F.3d 527 (6th Cir. 2006) .................................................................15

Smoak v. Hall,
460 F.3d 768 (6th Cir. 2006) .................................................................47

United States v. Gross,
662 F.3d 393 (6th Cir. 2011) ..........................................................18, 20

Vanpelt v. City of Detroit,
70 F.4th 338 (6th Cir. 2023) .................................................................40

**STATE COURT OF APPEALS CASES**

Brown v. Fournier,
No. 2015-CA-001429-MR,
2017 Ky. App. Unpub. LEXIS 705 (Ky. App. June 2, 2017) .................51

**UNITED STATES DISTRICT COURT CASES**

Johnson v. Smith,
No. 5:21-CV-00187-GNS-LLK,
2024 U.S. Dist. LEXIS 54967 (W.D. Ky. March 27, 2024) ...................21

Roberts v. Girder,
No. 6:15-CV-160-KKC2018,
U.S. Dist. LEXIS 123649 (E.D. Ky. July 23, 2018) .........................21, 22

## MISCELLANEOUS

Fed. R. Civ. P. 56(a) ................................................................................. 10

KRS 222.202 ............................................................................... 17, 18, 19

KRS 519.020 .................................................................. 17, 18, 20, 21, 22

U.S. Const. amend. XIV, § 2 ..................................................................... 15

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

In accordance with Fed. R. App. P. 34(a) and 6 Cir. R. 34(a), Appellant Anthony Camarca respectfully submits that this appeal warrants oral argument. Oral argument would be useful for the Court in understanding the issues in this case, particularly the complexities of the initial police encounter, detainment, and arrest that spanned approximately one minute in total. Counsel believes that this Court's disposition of this case would be aided by oral presentation to this Court.

# STATEMENT OF JURISDICTION

The district court had jurisdiction over this case pursuant to 28 USC §1343(a)(3) and 28 USC §1331 because Appellant ("Mr. Camarca") alleges constitutional violations and asserts his federal constitutional and statutory rights pursuant to 42 U.S.C. §1983 against persons acting under color of state law and for causes of action under the laws and Constitution of Kentucky. The district court exercised its mandatory jurisdiction over Mr. Camarca's state law causes of action pursuant to 28 U.S.C. §1367. Complaint, R. 1, Page ID# 2.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291. The district court entered its final appealable order granting the Appellees' Motion for Summary Judgment and denying the Appellee's motion to exclude Mr. Camarca's expert witness as moot on April 16, 2025. District Opinion, R. 60, Page ID# 1356. Subsequently, Mr. Camarca filed a timely notice of appeal on May 14, 2025. Notice of Appeal, R. 63, Page ID# 1363.

# STATEMENT OF ISSUES

I.  Under 42 U.S.C § 1983, did the district court err when granting summary judgment on Plaintiff's § 1983 claims against the Defendant Officers individually?

II.     Under 42 U.S.C § 1983, did the district court err when granting summary judgment on Plaintiff's § 1983 claims against the Defendant City and Defendant Officers in their official capacity?

III.    Under Kentucky law, did the district court err when granting summary judgment on Plaintiff's state law and punitive damage claims when it found that Defendant Officers did not use less than excessive force?

## STATEMENT OF THE CASE

### I.     Statement of the Facts

On October 17, 2021, Mr. Camarca and his family and friends were at a wedding celebration for the wedding of Mr. Camarca's brother-in-law, Thomas Cummins. The wedding party, which included Mr. Camarca and his wife, Sara Camarca, had rooms at the Marriott Courtyard in Covington for that night. Anthony Camarca ("Mr. Camarca") Depo., R. 41, Page ID# 431-33; Sara Camarca ("Sara") Depo., R. 47, Page ID# 913; Lacey Cummins ("Lacey") Depo., R. 43, Page ID# 548; Charles Cummins ("Charles") Depo., R. 42, Page ID# 507. When the wedding party retired to the hotel for the evening, a brief physical altercation arose between Mr. Camarca's wife, Sara, and her sister, Lacey, which led to the hotel clerk on duty calling the police. The hotel clerk told dispatchers that two females with black dresses were in a fight and requested that police officers to be dispatched to tell all of the guests to retire to their guest rooms or leave the hotel premises. That is when

the events relevant to this litigation began. 911 Audio, R. 56-1, Page ID# 1244, at 00:12-00:40. The altercation between Mr. Camarca's wife and her sister was the sole event that formed the basis for the Defendant Officers to be dispatched to the hotel. 911 Audio, R. 56-1, Page ID# 1244.

By the time that Defendant Woodward arrived at the hotel, there was no "excitement" whatsoever when the police arrived as any altercation was over. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:05. Defendant Morris arrived a few seconds after Defendant Woodward. Morris BWC, R. 56-5, Page ID# 1248, at 03:33:19. Lacey and her brother, Charles, were calmly sitting on the curb outside the hotel under the portico. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:14. The remaining group from the wedding party, including Mr. Camarca and his wife, Sara, were all inside in the hotel lobby area talking. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:33. Rather than diffusing the situation, the Defendant Officers strangely chose to incite the rather calm and collected parties. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:51.

All of the events following the arrival of Defendants Woodward and Morris are on videotape on the officers' body camera footage. Within seconds of Defendant Woodward's arrival and interaction with the wedding party, Defendant Woodward instructed everyone to go to their rooms and stay there for the rest of the night. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:51. Defendant Woodward then

abruptly changed his mind and instructed Mr. Camarca's wife, Sara, that she was not free to go. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:54 to 03:33:59. At that point, Mr. Camarca stepped toward his wife and asked Defendant Woodward why his wife was no longer free to retire to her room as this was just instructed to everyone. Woodward BWC, R. 56-3, Page ID# 1246, at 03:34:03. For no reason, Defendant Woodward then rudely yelled at Mr. Camarca and told him to "beat it" and "this does not concern you." Woodward BWC, R. 56-3, Page ID# 1246, at 03:34:05 to 03:34:06.

Mr. Camarca can be seen actively confused as he attempts to comply with Defendant Woodward's initial directions to remove himself from the lobby while wanting to be with his wife who was being given a conflicting and confusing command. Woodward BWC, R. 56-3, Page ID# 1246, at 03:34:04. Mr. Camarca was trying to diffuse the situation and go to his room as instructed. But Defendant Woodward was insistent that Mr. Camarca's wife, Sara, remain in the hotel lobby with no explanation. Woodward BWC, R. 56-3, Page ID# 1246, at 03:34:17.

Just mere seconds after Defendant Woodward gives his conflicting commands with no explanations, Defendant Woodward menaces toward Mr. Camarca and wraps his arms around him from behind physically prevent him from returning to his guest room and forcibly slammed Mr. Camarca against a nearby wall while Mr. Camarca's hands were open in a 'surrender' fashion. Woodward BWC, R. 56-3,

Page ID# 1246, at 03:34:22; Christen BWC, R. 56-4, Page ID# 1247, at 03:34:23 Defendant Christen had then arrived and swiftly assisted Defendant Woodward in slamming Mr. Camarca headfirst into the wall and tackling him to the ground. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:23. Mr. Camarca was not under arrest at the time Defendants Woodward and Christen assaulted and battered him. In fact, Mr. Camarca was never told he was under arrest throughout all the force inflicted on him. While providing no threat, no active resistance, and no indication of a crime having been committed by Mr. Camarca, Defendant Woodward makes the conscious decision to take Mr. Camarca down.

Contrary to the district court's imaginary characterizations, Mr. Camarca clearly did not make any combative or aggressive movements toward Defendant Woodward or Christen before being slammed to the wall and tackled to the ground by Defendants Woodward and Christen; nothing close to an aggressive movement by Mr. Camarca are shown in the body camera footage. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:22. Throughout the subsequent uses of force on the floor by Defendants Woodward and Christen, it is highly significant that Mr. Camarca can be seen attempting to put his hands up in the 'surrender' position while the Defendants constantly make any compliance impossible. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:27; Christen BWC, R. 56-4, Page ID# 1247, at 03:34:31.

Defendants Woodward and Christen subsequently handcuffed Mr. Camarca while on the floor. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:48 to 03:35:05. While Mr. Camarca was lying on the floor, his right leg was visibly injured and Defendant Christen can even be seen examining it in Defendant Mathews's body camera footage. Mathews BWC, R. 56-6, Page ID# 1249, at 03:34:48 to 03:35:24, 03:35:40; Christen BWC, 56-4, Page ID# 1247, at 3:35:27. Despite Mr. Camarca's obvious injury, Defendant Woodward decides to stand Mr. Camarca up on his feet and intentionally throw him headfirst into the wall and tile floor. Camarca Depo., R. 41, Page ID# 468; Christen BWC, 56-4, Page ID# 1247, at 03:35:39; Morris BWC, R. 56-5, Page ID# 1248, at 03:35:40; Mathews BWC, R. 56-6, Page ID# 1249, at 03:35:41; Woodward BWC, R. 56-3, Page ID# 1246, at 03:35:41. Defendant Woodward can be seen smirking at Defendant Morris after this malicious assault. Morris BWC, R. 56-5, Page ID# 1248, at 03:35:43. From this throw, Mr. Camarca indicates eight separate times that his leg is broken up until the next use of force. Christen BWC, 56-4, Page ID# 1247, at 03:35:41, 03:35:43, 03:35:45, 03:35:54, 03:36:03, 03:35:16, 03:36:27, 03:36:32.

Rather than heed to Mr. Camarca's continuing pleas that his leg was broken, Defendants Woodward and Christen forced Mr. Camarca to stand up a second time after his injury is even more obvious, buckle on his broken leg, walk outside of the hotel approximately fifty (50) to seventy-five (75) yards, while his broken right leg

was dangling. Christen BWC, 56-4, Page ID# 1247, at 03:36:54. Mr. Camarca can be seen "hopping" on his left leg with his right leg dangling as the Defendants dragged him outside providing no support. Morris BWC, R. 56-5, Page ID# 1248, at 03:36:33 to 03:36:53. Finally, at that point, Officer Christen requested an ambulance from dispatch. This entire event took less than 4 minutes. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:05 to 03:36:58.

Contrary to Defendants' claims, there is no factual basis whatsoever in the record from which Defendants' counsel could even infer that Mr. Camarca was "faking" his broken leg. Motion for Summary Judgment, R. 38, Page ID# 305. The Defendant Officers simply ignored Mr. Camarca's pleas that his leg was broken and continued about their uses of force against him. Mr. Camarca's examination at the hospital confirmed that Mr. Camarca did in fact suffer from a broken leg from the actions of Defendants Woodward and Christen. Indeed, Mr. Camarca's right lower leg was completely broken in two places: his tibia and his fibula. Mr. Camarca had a lengthy recovery from his broken leg for which he is entitled to recover damages from the Defendants. Camarca Depo., R. 41, Page ID# 478-81.

Mr. Camarca was charged with alcohol intoxication, resisting arrest, disorderly conduct and menacing, none of which are supported by a review of the body camera video footage of the Defendant police officers. Mr. Camarca consistently disputed throughout his criminal case that the Defendant police officers

had any probable cause to detain and arrest him. The Commonwealth ultimately dismissed all of those charges with the exception of the alcohol intoxication charge to which Mr. Camarca reluctantly pled guilty.

Following this malicious treatment, Mr. Camarca brought suit against Defendants Woodward, Christen, Morris, Mathews, and Gilliland (Defendants"), asserting claims, pursuant to 42 USC § 1983, for unlawful detention, unlawful arrest, excessive force, and violation of equal protection rights. Complaint, R. 1, Page ID# 7. Mr. Camarca also filed suit for the same § 1983 violations against the City of Covington and the officers in their official capacity pursuant to Monell. Complaint, R. 1, Page ID# 6-7, 8-10. Finally, Mr. Camarca asserts state-law claims of assault and battery against Defendants Woodward and Christen, and for intentional infliction of emotional distress and punitive damages against the Defendant Officers. Complaint, R. 1, Page ID# 10-12.

## II. Course of Proceedings and Disposition in the Court Below

Whilst enjoying his night after attending a family wedding, Mr. Camarca was subjected to unlawful detention and arrest, excessive force, a denial of his right to equal protection and due process of the law, assault, battery, and intentional infliction of emotional distress. On October 14, 2022, Mr. Camarca properly filed a complaint in the United States District Court for the Eastern District of Kentucky against Defendant Officers Woodward, Christen, Morris, Mathews, and Gilliland as

well as Defendant City of Covington, Kentucky the above-mentioned claims under 42 U.S.C. § 1983 and applicable state law. Complaint, R. 1, Page ID# 1-24.

After Defendants' filed their Answer on December 14, 2022, both parties engaged in multiple depositions, and both parties retained their respective experts, the Defendants filed a Motion for Summary Judgment on all claims on October 15, 2024. Motion for Summary Judgment, R. 38, Page ID# 292-93. Respective memorandums in support and opposition were filed as well as a reply memorandum by Defendants. Pl. Response in Opposition, R. 56, Page ID# 1241; Motion for Summary Judgment, R. 38, Page ID# 294-336; Def. Reply, R. 58, Page ID# 1315. Along with the Motion for Summary Judgment and the Responses came the Defendants' Motion to Exclude Plaintiff's Expert, and the parties filed its respective memorandums in support and opposition as well as a reply memorandum by Defendants. Motion to Exclude, R. 37, Page ID# 139-70; Pl. Response in Opposition to Exclude, R. 54, Page ID# 963-72; Def. Reply to Strike, R. 59, Page ID# 1330-37.

Although the Defendants did not show that there was not a genuine dispute of material facts, the United States District Court for the Eastern District of Kentucky granted the Defendants' Motion for Summary Judgment and ordered for the dismissal of all claims while denying Defendants' Motion to Exclude Plaintiff's Expert as moot on April 16, 2025. District Opinion, R. 60, Page ID # 1338-56; District Judgment, R. 61, Page ID# 1357. Mr. Camarca timely filed his Notice of

Appeal on May 14, 2025 properly preserving all issues. Notice of Appeal, R. 63, Page ID# 1363. Because Mr. Camarca has provided sufficient evidence to show that there are genuine disputes of material fact in every claim, the district court erred when granting summary judgment. This Court should reverse the United States District Court for the Eastern District of Kentucky's decision granting the Defendants' Motion for Summary Judgment and denying the Defendants' Motion to Exclude the Plaintiff's Expert as moot.

## III.    Standard of Review

The Sixth Circuit reviews a district court's grant of summary judgment de novo. <u>Lowe v. Walbro LLC</u>, 972 F.3d 827 (6th Cir. 2020) (citing <u>Keith v. County of Oakland</u>, 703 F.3d 918, 923 (6th Cir. 2013)). Summary judgment is only appropriate where the evidence presents no genuine dispute of material fact such that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). This Court finds that a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Saunders v. Ford Motor Co.</u>, 879 F.3d 742, 748 (6th Cir. 2018) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, (1986)). Finding that such a genuine dispute of material fact exists requires the denial of summary judgment. <u>Anderson</u>, 477 U.S. at 248.

Instead of weighing the evidence to determine the truth of the matter, the Court views the facts in the light most favorable to the nonmoving party. <u>Scott v.</u>

Harris, 550 U.S. 372, 378 (2007). And, when police videos depict all of the genuinely disputed facts, the Court views the facts in the light depicted by the videotapes while gaps in the videos are filled in favor of the nonmoving party. Rudlaff v. Gillispie, 791 F.3d 638, 639 (6th Cir. 2015) (citing Scott, 550 U.S. at 381).

## SUMMARY OF THE ARGUMENT

The district court erred when granting the Defendants' Motion for Summary Judgment because Mr. Camarca proved with sufficient evidence that there are genuine disputes of material facts within every claim: (1) unlawful detention, (2) unlawful arrest, (3) excessive force, (4) denial of right to equal protection and due process of the law, (5) assault and battery, and (6) intentional infliction of emotional distress. This erroneous finding requires that this court reverse the district court's decision.

First, Mr. Camarca proved that Defendants Woodward and Christen did not have the reasonable suspicion or probable cause required to detain or arrest Mr. Camarca. A reasonable officer would not reasonably believe that criminal activity was afoot due to any particularized or objective basis as is needed to form even reasonable suspicion. Despite Mr. Camarca's rather unpleasant language and contrary to the district court's beliefs, Mr. Camarca was non-threatening towards Defendant Officers. He can even be reasonably believed to be attempting to comply

with the Defendants' commands just before he is forcibly slammed into the wall and taken down to the grown where his right leg will break in his tibia and fibula while his ankle will be shattered. Defendant Officers did not have even reasonable suspicion let alone probable cause to detain or arrest Mr. Camarca.

Second, Defendants Woodward and Christen employed excessive force upon Mr. Camarca during four separate, but equally egregious segments of the events: (1) the slamming into the wall, (2) the takedown and subsequent forces on the floor, (3) Defendant Woodward throwing a visibly injured Mr. Camarca headfirst to the wall and tile floor, and (4) Mr. Camarca being forced to stand on his injured leg while subsequently being dragged out of the building. When reviewing each segment using the three Graham factors, it is evident that Defendants Woodward and Christen continued their malicious uses of force as Mr. Camarca was attempting to surrender at least three separate times. Also, a reasonable jury could conclude that the uses of force inflicted upon Mr. Camarca, including the slamming into the wall, tackle to the ground, chokehold, pulling of his arms, pushing his face into the floor, throwing him headfirst to the wall, and forcing him to stand and hop with his injured leg, constituted force that any reasonable officer would constitute as excessive and unreasonable. Under Graham, it is evident that summary judgment was inappropriate as Mr. Camarca's crime that he is suspected of committed is not severe, he was never actively resisting, and he never posed a threat to officers or others.

Third, all other Defendant Officers, Defendants Gilliland, Morris, and Mathews, are liable for not intervening in Defendant Woodward and Christen's unlawful conduct. Under <u>Kowolenek v. Moore</u>, police officers have a duty to intervene and ones constitutional rights from being violated. Defendant Officers had ample opportunity to intervene in Defendant Woodward and Christen's unlawful conduct as all are seen at some point in time standing, doing nothing, and merely observing the atrocities happen in front of their eyes.

Fourth, Mr. Camarca proved that his constitutional right to equal protection of the law and due process was violated when individuals in the hotel lobby that same night acted similarly to Mr. Camarca, but none got slammed into a wall, tackled on the ground, and pushed and pulled all the while gaining a severe injury to his right leg. The district court's conclusory denial of this claim is inappropriate and ignores the disparate treatment on no rational basis that Mr. Camarca was subjected to by Defendant Officers.

Fifth, all Defendant Officers are not entitled to qualified immunity. As described, Defendants clearly violated Mr. Camarca's constitutional rights. The only question remaining is whether (2) that right was clearly established so that an officer would be on notice that his/her conduct is unlawful. Through a showing of several precedents which facts reflect the facts of Mr. Camarca's case, Mr. Camarca proves, or at a minimum finds a genuine dispute of material fact on the matter, that the

Defendant Officers were sufficiently on notice that their conduct was in violation of Mr. Camarca's constitutional rights, deeming the district court's finding that Defendants are entitled to qualified immunity erroneous and needing reversal.

Sixth, the Defendant City and Defendant Officers acting in their official capacity are liable for the same §1983 claims as the Defendant officers individually through <u>Monell</u> and its progeny. It is clear that the City of Covington failed to adequately train its officers which led to a deliberate indifference to the rights of persons with whom the police come into contact. Mr. Camarca's Expert, Dr. Stiehm, showed evidence that there were gaps in some Defendant Officers' trainings which, at the very least, creates a genuine dispute of material fact as to whether these gaps led to the deliberate indifference that then caused Defendant Officers' to injure Mr. Camarca.

Finally, Mr. Camarca's state claims are to be brought to a jury to decide on whether Defendant Officers actions, which are already established to be excessive, constitute assault and battery. A jury is also empowered to decide if the Defendant Officers intentionally inflicted emotional distress upon Mr. Camarca throughout the night with their malicious and egregious acts of force and indifference to Mr. Camarca's rights and injured state. The question of punitive damages is also one that is most proper for a jury to decide.

Because of the district court's erroneous review of the record in the light more favorable to the Defendants, the district court erroneously held that Mr. Camarca failed to provide sufficient evidence to show that there were genuine disputes of material fact in each claim. Accordingly, when viewing the facts in the light most favorable to Mr. Camarca as is required, this Court should reverse the trial court's decision to grant the Defendant's Motion for Summary Judgment and deny the Defendant's Motion to Exclude Plaintiff's Expert as moot.

## **ARGUMENT**

The Fourth Amendment of the United States Constitution protects people "against unreasonable searches and seizures." U.S. Const. amend. XIV, § 2. To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law when construed most favorably to the plaintiff. Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988). In addition to Mr. Camarca's § 1983 claims, because of Defendant Woodward and Christen's excessive force inflicted on Mr. Camarca, Mr. Camarca is not precluded by the guideposts of KRS 503.090 from asserting his state law claims of assault and battery, as well as his intentional infliction of emotional distress and punitive damages claims against all Defendants. See Browning v. Edmonson Cnty., Kentucky, 18 F.4th 516 (6th Cir, 2021).

When reviewing the present claims against the Defendants, it is undisputed that Mr. Camarca has met the second element of a § 1983 claim—Officers Woodward, Christen, Morris, Mathews, and Gilliland ("Defendant Officers") were all acting under the color of state law when they detained, assaulted, battered, and arrested Mr. Camarca. To meet the first element of a § 1983 claim—deprivation of a Constitutional right or United States' law—Mr. Camarca asserts that the Defendant Officers subjected him to (1) an unlawful detention, (2) unlawful arrest, (3) excessive force, and (4) a denial of the Fourteenth Amendment's equal protection and due process of the law. As noted in Mr. Camarca's Response in Opposition of the Defendants' Motion of Summary Judgment, Mr. Camarca's previous claim in his Complaint of a violation of his right to counsel has been voluntarily conceded. Pl. Response in Opposition, R. 56, Page ID# 1241. And, contrary to the Defendants' assertion that the Officers are shielded of any liability by qualified immunity, qualified immunity does not shield the Defendant Officers because their assault and battery of Mr. Camarca was quite obviously in violation of Mr. Camarca's clearly established rights.

The city of Covington, Kentucky ("Defendant City") and all Defendant Officers which were acting in their official capacity are also liable for the same Constitutional violations. Through the <u>Monell</u> precedent and its progeny, it is clear that there was an obvious failure to train by the city that led to the Defendant Officers

showing a deliberate indifference to the rights of persons they make contact with. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

Given the facts viewed in the light most favorable to Mr. Camarca and the overwhelming support from Supreme Court and Sixth Circuit precedent, the district court erred when it found that there is no genuine dispute of material facts. The district court erroneously viewed the facts more favorably to the Defendants while also accepting a version of events given by the Defendants that is so clearly contradictory to the body worn camera footage available. Because the evidence and caselaw demonstrate that Mr. Camarca has shown that there are genuine disputes of material facts among all claims, this Court must reverse the decision of the district court granting the Defendants' Motion for Summary Judgment and denying the Defendants' Motion to Exclude as moot.

I.   **THE DISTRICT COURT ERRED WHEN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S § 1983 CLAIMS AGAINST THE DEFENDANT OFFICERS.**

   A.   **Defendants Woodward And Christen Did Not Have Reasonable Suspicion or Probable Cause to Detain And Arrest Plaintiff.**

When determining whether Defendant Woodward and Christen had reasonable suspicion and probable cause to detain and arrest Mr. Camarca, the district court relied on two bases of support: (1) public Intoxication under KRS 222.202(1) and (2) obstructing the performance of a governmental function under

KRS 519.020. For the reasons further outlined, Defendants Woodward and Christen neither had reasonable suspicion or probable cause that justified detainment or arrest.

Kentucky law states that "a person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." KRS 222.202. No one disputes the fact that Mr. Camarca was in a public place—a hotel lobby. However, Defendants Woodward and Christen had no "particularized" or "objective" basis to believe that criminal activity was afoot. See United States v. Gross, 662 F.3d 393, 399 (6th Cir. 2011).

First, the district court erroneously states that Defendant Woodward and Christen had received information "from the dispatcher about the wedding parties' level of intoxication." District Opinion, R. 60, Page ID# 1343. However, both Defendant Woodward and Christen never state that they were told any information about intoxication levels of the guests. In Defendant Woodward's deposition, he stated that the hotel clerk told him "they had been drinking, they were still drinking." Woodward Depo., R. 45, Page ID# 720. This is a lie; Defendant Woodward has this whole conversation with the hotel clerk is on his body camera and no talk of intoxication levels was present. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:15 to 03:33:28. Defendant Woodward "just knew there was a group of people fighting" and later was told that two women were the people engaged in a fight by

the hotel clerk. Woodward Depo., R. 45, Page ID# 716; Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:15 to 03:33:28. Additionally, Defendant Christen can only recall that the call involved "multiple people actively fighting." Christen Depo., R. 46, Page ID# 836-38.

Second, the interactions between Defendants Woodward and Christen and Mr. Camarca before his detainment and arrest lasted a mere fifteen seconds. Within those fifteen seconds, Defendant Woodward was the only officer within five feet of Mr. Camarca before Defendant Woodward wrapped his arms around Mr. Camarca to slam him into the wall and take him down to the floor. In other words, Defendant Christen could not have had reasonable suspicion or probable cause to arrest Mr. Camarca on a public intoxication basis as he barely even observed Mr. Camarca's behavior. Defendant Woodward only points to Mr. Camarca's alleged aggression and shouting as a basis for his suspicion that he was intoxicated. Woodward Depo., R. 45, Page ID# 794-95. Being verbally combative is obviously not a particularized or objective basis to believe that someone is intoxicated; maybe that person is just verbally combative. Based on these facts given by the Defendants themselves, a reasonable jury can conclude that Defendants did not have reasonable suspicion let alone probable cause to suspect that Mr. Camarca was in violation of KRS 222.202.

Kentucky law also states that it is a crime to "intentionally obstruct[], impair[] or hinder[] the performance of a governmental function by using or threatening to

use violence, force or physical interference." KRS 519.020. Once again, Defendants Woodward and Christen had no "particularized" or "objective" basis to believe that criminal activity on this basis was afoot. See Gross, 662 F.3d at 399.

The district court erroneously states that Defendant Woodward had a "first-hand observation" of Mr. Camarca violating this statute when Mr. Camarca grabs his wife. District Opinion, R. 60, Page ID# 1342. This is incorrect. When watching the body camera footage, one can see that Mr. Camarca's hand was actually off his wife before Defendant Woodward wraps his arms around Mr. Camarca and slams him into the wall. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:21. In fact, one can see that it is actually Sara that is trying to keep a hold onto Mr. Camarca's hand. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:22. This not only puts into dispute the reasonableness of believing that Mr. Camarca was truly physically interfering with a governmental function, but also Mr. Camarca's intent. Any alleged violation of KRS 519.020 was clearly not in occurrence at the time when Officer Woodward decided to detain and arrest Mr. Camarca.

Mr. Camarca's statements claiming that he is free to leave can also be seen as compliance to Defendant Woodward's previous directions to "beat it" and to go up to their rooms for the night. Woodward BWC, R. 56-3, Page ID# 1246, at 03:33:50 to 3:33:59. Defendant Woodward gives conflicting statements within a matter of seconds and then expects Mr. Camarca to understand which of his directions to

follow without any clarification. Because of the obviously confusing and conflicting demands, Officer Woodward had at that time no basis to believe that Mr. Camarca intended to obstruct his investigation by physical interference.

In <u>Johnson v. Smith</u>, the court found that a reasonable jury could find that there was no "connotation of violence" by the plaintiff's behavior to support a finding of probable cause. <u>Johnson v. Smith</u>, No. 5:21-CV-00187-GNS-LLK, 2024 U.S. Dist. LEXIS 54967, at *11 (W.D. Ky. March 27, 2024). In that case, plaintiff was standing in his room's doorway, was told to go back into his room, replied "look sir, I am", and was subsequently grabbed and pulled out of his room. <u>Id.</u> at *13-14. This sequence of events is almost identical to Mr. Camarca's circumstances: Mr. Camarca is standing in the hotel lobby; he was told to go up to his room; Mr. Camarca attempts to do so; and was subsequently grabbed slammed into the wall and tackled to the ground. Therefore, Mr. Camarca has provided sufficient evidence to show that Defendant Woodward and Christen did not have probable cause to arrest Mr. Camarca on the basis of a violation of KRS 519.020. Or, at a minimum, these material facts are genuinely disputed.

Alternatively, subsection (2)(a) provides a circumstance when this statute does not apply: "Any means of avoiding compliance with the law without affirmative interference with governmental functions." KRS 519.020(2)(a). The <u>Roberts v. Girder</u> court specifically addressed the meaning of "affirmative

interference," and found that mere refusals without any verbal threats of physical violence may not amount to the affirmative interference required for the statue to apply. Roberts v. Girder, No. 6:15-CV-160-KKC2018, U.S. Dist. LEXIS 123649, at *21-22 (E.D. Ky. July 23, 2018). A reasonable jury can conclude that Mr. Camarca's actions did not rise to the affirmative interference required by KRS 519.020.

Mr. Camarca was never a suspect. He was not a subject that the hotel clerk even pointed out to Defendant Officers. The 911 call was about two females in black dresses fighting, and Mr. Camarca certainly did not meet that description. Just seconds after initially interacting with Mr. Camarca, Defendant Woodward slammed him into the wall and took him down to the ground completely unprovoked. Therefore, the district court erred when holding that that Defendant Woodward and Christen had reasonable suspicion and probable cause to detain and arrest Mr. Camarca and that no genuine dispute of material fact exists with respect to this claim. Because of this, this Court must reverse the district court's order granting summary judgment on Mr. Camaca's §1983 claims of unlawful detention and arrest.

**B.** **Defendants Woodward And Christen Used Excessive Force Upon Plaintiff When They Detained And Arrested Plaintiff.**

When analyzing Mr. Camarca's § 1983 excessive force claim, the district court relied on the established framework given by the Supreme Court in Graham v. Connor. District Opinion, R. 60, Page ID# 1343-50. However, in its application of these particular facts to Graham's analysis, the district court erred when ignoring

Mr. Camarca's deposition testimony that supports the depiction of events on the available body camera footage and solely relied on the Defendant Officers' testimonies. When viewing the facts in the light most favorable to Mr. Camarca, as is the standard during summary judgment, this Court must find that there are genuine disputes of material fact regarding the reasonableness of the Defendant Officers' force applied to Mr. Camarca.

Under the Fourth Amendment' s guarantee against unreasonable searches and seizures contains another protection against the use of excessive force which is assessed by its "reasonableness." Graham v. Connor, 490 U.S. 386, 396 (1989). This reasonableness analysis is "assessed from a perspective of a reasonable officer on the scene without the benefit of 20/20 vision of hindsight." Id. at 396-97. While looking at the totality of the circumstances, the Graham court identified three factors to consider: (1) "the severity of the crime at issue", (2) "whether the suspect poses an immediate threat to the safety of the officers or others", and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

In Osborn v. City of Columbus, this Court used the Graham framework to analyze whether the police officers inflicted excessive force upon the plaintiff. In the early morning hours, plaintiff had lost control of his vehicle striking an overpass and crashed into two parked cars. Osborn v. City of Columbus, No. 22-3570, 2023 U.S. App. LEXIS 6264 (6th Cir. March 15, 2023). Police officers were dispatched

to the scene. Id. at 2. From there, accounts of the events differed. Id. Police officers claimed that plaintiff approached them with his hands in his pocket and then proceeded to hold up an unknown object. Id. at 3. After plaintiff was told to back up, ignored officers, was then pushed away, and approached officers once more, the polices officers performed a level one takedown of plaintiff. Id. at 3-4. The police officers claimed that plaintiff started to actively resist by pulling away, rolling over, and kicking his legs, resulting in a series of punches to plaintiff's torso. Id. at 4. During the assault, plaintiff received more punches to his torso and face while later being tased multiple times. Id.

Plaintiff's account of events differed. Id. Plaintiff alleged that he got out of his car and approached the officers with his hands up, holding his phone. Id. at 5. And, without any clear verbal commands, an officer took him into the ground and inflicted a series of punches, kicks, and tases. Id. Plaintiff was going in and out of consciousness but remembered being submissive and not resisting. Id. In fact, plaintiff remembers being asked for his hands, but could not comply because the officers themselves had control of them. Id. At no point was plaintiff aware of why he was being detained or that he was under arrest. Id.

Following this incident, plaintiff filed suit against the police officers and the City of Columbus alleging a multitude of claims including a § 1983 excessive force claim. Id. at 6. The officers moved for summary judgment and the district court

denied their motion on this claim finding that "there remain genuine disputes of material facts regarding qualified and statutory immunity." Id. The officers appealed. Id.

On appeal, the Sixth Circuit was asked if plaintiff presented sufficient evidence to create a genuine dispute of material facts as to the officers' use of force. Id. at 9. When such disputes remain, they "must be reconciled by the fact-finder." Id. (citing Hernandez v. Boles, 949 F.3d 251, 258-59 (6th Cir. 2020)). While considering the Graham factors, the Sixth Circuit found that it could not conclude that the officers' conduct was objectively reasonable and therefore was excessive. Id. at 10.

When assessing (1) the severity of the crime at issue, the court questioned the presence of an actual crime; the officers were responding to a car accident and, despite evidence later supported a violation of a disorderly conduct statute, the officers had no reason to arrest the plaintiff at their arrival on scene. Id. at 10-11. Rather, the officers admitted that the arrest was made to secure the plaintiff and further investigate the scene. Id. Because no crime was found to be committed at the outset of police interactions, the court found that the first Graham factor weighed against the officers' reasonableness. Id. at 10.

When assessing (2) whether plaintiff was an immediate threat to officers or others, the body camera footage shows that the unknown object that officers claimed

to see plaintiff welding was clearly a cell phone. Id. at 12. While officers also claimed that plaintiff was ignoring their commands and approaching them, plaintiff claimed that he was given no commands to stop, drop the item in his hand, or to do anything before being taken down. Id. When viewing the facts in the light most favorable to plaintiff, as required, the court found that the second Graham factor weighed against the officers' reasonableness. Id.

Finally, when assessing (3) whether the plaintiff was resisting arrest, the court found that plaintiff's alleged active resistive behavior during the initial encounter was disputed; plaintiff also claimed that he was unable to comply later due to the officers' having control over his body. Id. at 13. Any passive resistance by plaintiff would not justify the officers' use of force against plaintiff, and therefore the question of whether plaintiff's movements constituted resistance "creat[ed] a question of fact better suited for a jury." Id. at 14; See Shreve v. Jessamine Cnty. Fiscal Ct., 453 F.3d 681, 687 (6th Cir. 2006) (holding that an officer's use of force in response to an individual failing to produce her hands for cuffing is excessive). The Sixth Circuit held that the Graham factors supported plaintiff's assertion that the officers acted unreasonable, and at a minimum, that plaintiff put forth sufficient facts to create a genuine dispute of material fact on that issue. Osborn, 2023 U.S. App. LEXIS 6264, at *16.

1. **Defendant Woodward's Slam of Mr. Camarca Into the Wall Constitutes Excessive Force.**

### i. Mr. Camarca Was Not Suspected of a Serious or Violent Offense.

In the present case, Mr. Camarca's circumstances are very similar to the Osborn plaintiff's. Mr. Camarca, like the plaintiff in Osborn, was not a suspect detailed by 911 call and was even told to "beat it" and that the police work did not concern him. 911 Audio, R. 56, Pl. Ex 1, at 1:14; Woodwood BWC, R. 56, Pl. Ex. 3, at 03:33:06 to 03:34:04. It is undisputed that the first Graham factor weighs against the reasonableness of Defendant Woodward's slamming of Mr. Camarca into the wall. Motion For Summary Judgment, R. 38, Page ID# 323; District Opinion, R. 60, Page ID# 1345. Mr. Camarca, assuming *arguendo* that he was truly thought to have committed any crime, was not suspected of a serious or violent offense. However, the district court erred when analyzing the second and third Graham factors as weighing in favor of the reasonableness of Defendant Woodward's slam of Mr. Camarca into the wall.

### ii. Mr. Camarca Did Not Pose an Immediate Threat to Officers or Others.

Contrary to Defendant Woodward's assertion that Mr. Camarca posed an immediate threat to him and/or others, his own body camera footage coupled with Defendant Christen's body camera footage shows no such threat existed. In fact, Defendant Woodward's testimony that Mr. Camarca "approached [him] in an aggressive manner with clenched fists" is directly contradicted by the Defendant

Christen's body camera footage; Mr. Camarca can be seen immediately preceding Defendant Woodward's initial physical contact with his back turned to Defendant Woodward and both hands open. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:21 to 03:34:22. The only person that takes aggressive steps toward another is Defendant Woodward to Mr. Camarca. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:18 to 03:34:22. When taking into account Mr. Camarca grabbing his wife and general profanity used towards Defendant Woodward, Defendant Woodward still fails to show that his slam of Mr. Camarca into the wall was reasonable.

This Court in King v. City of Rockford upheld that "mere agitated hand gestures and profanity, unaccompanied by threats, fall short of the prototypical behavior that would make an officer fear for his physical safety." King v. City of Rockford, 97 F.4th 379, 395 (6th Cir. 2024) (citing Shumate v. City of Adrian, 44 F.4th 427 (6th Cir. 2022) (citing Kent v. Oakland Cnty., 810 F.3d 384 (6th Cir. 2016))). In reliance on Rudlaff v. Gillespie, the district court attempted to equate Mr. Camarca's foul language and steps taken toward his wife as an aggressive or threatening act toward Defendant Woodward. However, this Court in Rudlaff found that officer's force reasonable when the individual was verbally defiant, puffing out his chest while staring down an officer, and swinging his arms toward an officer twice. Rudlaff, 791 F.3d at 640. Like this Court found in Shumate, Mr. Camarca's actions clearly "does not fall into that camp." Shumate, 44 F.4th at 444.

Mr. Camarca's lack of threat is even highlighted by Defendant Woodward's own words on the night of the incident. Defendant Woodward attempted to explain his justification for his initial shoving into the wall to Defendant Gilliland by saying that Mr. Camarca "calls me an asshole," "tells me to go fuck myself," "starts menacing," and "came over toward me, fists clenched, and got in my face." Woodwood BWC, R. 56, Pl. Ex. 3, at 03:42:52. Defendant Woodward had to tell lies alleging Mr. Camarca was menacing and that his fists were clenched in order to justify his clear excessive force. None of the menacing, clenched fists, or getting in Defendant Woodward's face is captured on any body camera footage. This is also evident by the expert testimony of Dr. Stiehm. Dr. Stiehm testified in his discovery deposition that Defendants Woodward and Christen failed to follow the established use of force continuum in this case, which then prompted Defendant Woodward to attempt to justify his force through lies. Dr. Stiehm Depo., R. 44, Page ID# 693-94.

When viewing the body camera footage in the light as depicted by the videotapes and all other facts in the light most favorable to Mr. Camarca, this Court has no choice than to find similarly to <u>Osborn</u>, <u>King</u>, and <u>Shumate</u> that a reasonable jury could find that Mr. Camarca did not pose an immediate threat that justified Officer Woodward's initial slamming of him into the wall. This weighs the second <u>Graham</u> factor against the reasonableness of Defendant Woodward's slamming of Mr. Camarca into the wall.

### iii.    Mr. Camarca Did Not Actively Resist Arrest.

Like the plaintiff in Osborn, Mr. Camarca's resistive behavior is disputed. The district court erroneously concluded without any factual explanation that Mr. Camarca's conduct was "an overt attempt to flee… from an investigation." District Opinion, R. 60, Page ID# 1346. However, the third Graham factor turns on "whether he is actively resisting ***arrest*** or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (emphasis added). The suggestion that Mr. Camarca's conduct amounted to acts of defiance is extremely diminished by the fact that he was never told that he was under arrest until after every use of force inflicted upon him. Woodward Depo., R. 45, Page ID# 728, 732. As emphasized in Osborn, "the general consensus among our cases is that officers cannot use force . . . on a detainee who . . . is not told he is under arrest, or is not resisting arrest." Osborn, 2023 U.S. App. LEXIS 6264, at *13 (citing Grawey v. Drury, 567 F.3d 302, 314 (6th Cir. 2009) (collecting cases)); See Shumate, 44 F.4th 427 (holding that the plaintiffs alleged act of defiance during arrest was diminished because he was not told that he was under arrest until after officers used physical force and tased him). Mr. Camarca's actions immediately preceding Defendant Woodward's slam of Mr. Camarca into the wall show no indication of active resistance of arrest. Like the Sixth Circuit concluded in Shumate, a reasonable jury could conclude that that no reasonable officer would believe that Mr. Camarca was actively resisting arrest. This weighs the third Graham factor

against the reasonableness of Defendant Woodward's slamming of Mr. Camarca into the wall.

When viewing the facts in the light most favorable to Mr. Camarca, the Graham analysis leads this Court to the conclusion that Defendant Woodward's use of force was not objectively reasonable. The facts show that the severity of the offense (assuming there was one) was very low; Mr. Camarca posed no immediate threat to the officers or others; and Mr. Camarca offered no active resistance to a supposed arrest that he was not even told was occurring.

In addition to the support of the Graham factors, Dr. Stiehm testified in his discovery deposition that the Defendant Officers clearly and without question failed to follow the established policies and procedures adopted by the City of Covington Police Department. Dr. Stiehm Depo., R. 44, Page ID# 687-91, 694. Dr. Stiehm stated that at the origin of the police officers' training is a use of force continuum which identifies the gradual steps to be taken before using force against a person; essentially, officers are required to try to talk to potential subjects to diffuse a situation before engaging in the use of physical force. Dr. Stiehm Report, R. 56-8, Page ID# 1271-74; Dr. Stiehm Depo., R. 44, Page ID# 681-84. Dr. Stiehm provided his expert opinion that Defendants Woodward and Christen outright abandoned the established use of force continuum in this case, which directly resulted injury to Mr. Camarca. Dr. Stiehm Depo., R. 44, Page ID# 693-95; Dr. Stiehm Report, R. 56-8,

Page ID# 1275. The Defendants' expert, Mr. John Ryan, can only explain away this deliberate failure to follow the City of Covington Police policies by stating that he does not "agree" with the policies as they are written. Mr. Ryan Depo., R. 55, Page ID# 1133-34.

Given these facts, the district court erred when holding that that Defendant Woodward acted reasonably as a matter of law and that no genuine dispute of material fact exists with respect to this segment.

**2. <u>Defendant Woodward and Christen's Takedown and Subsequent Forces on The Ground of Mr. Camarca Constitute Excessive Force.</u>**

When analyzing the second segment of force in this case, the evaluation of the first <u>Graham</u> factor remains the same: it is undisputed that the first <u>Graham</u> factor weighs against the reasonableness of Defendant Woodward and Christens' takedown of Mr. Camarca as Mr. Camarca's alleged crimes were very low in severity. In erroneously finding that the takedown and subsequent immediate force in order to handcuff Mr. Camarca were objectively reasonable, the district court seemingly solely relied on the Defendants' assertions that Mr. Camarca was actively resisting arrest. District Opinion, R. 60, Page ID# 1346-47. Contrary to Defendants' assertions, the body camera footage along with Mr. Camarca's deposition testimony give a different account of these events.

Once again, the suggestion that Mr. Camarca's conduct amounted to acts of defiance is extremely diminished by the fact that he was never told that he was under arrest until after all uses of force were inflicted upon him. Woodward Depo., R. 45, Page ID# 728, 732; See Grawey, 567 F.3d at 314. However, regardless of Mr. Camarca's arrest status, the district court interpreted just two instances in the available body camera footage that seemingly shows Mr. Camarca actively resisting: "moments before the takedown, Camarca can be seen in the body camera footage locking up his body to avoid being detained while simultaneously reaching toward Officer Christen's neck or upper chest area" and "after the takedown, body camera footage clearly demonstrates that Camarca continued resisting by grabbing at the officers' arms." District Opinion, R. 60, Page ID# 1347. The only other alleged active resistance cited by the district court were verbal remarks made by Mr. Camarca and, strangely, another person's actions during the takedown of Mr. Camarca. Id.

As the district court correctly acknowledges that the motive for the tackling of Mr. Camarca is unclear, the district court failed to point out how this unprovoked use of force was inflicted on Mr. Camarca without any preceding police command. In fact, the only police command given to Mr. Camarca during the takedown and handcuffing is a command to "get up" from Defendant Christen as Mr. Camarca was simultaneously being pushed to the ground by Defendant Woodward. Christen

BWC, R. 56-4, Page ID# 1247, at 03:34:26 to 03:34:27. Compliance of this command can reasonably be seen as impossible, as Defendant Woodward was pulling him down and in full control of Mr. Camarca's body; as Mr. Camarca was unable to comply, his later alleged lack of compliance is now the justification for the Defendants' future uses of force. See Osborn, 2023 U.S. App. LEXIS 6264, at *15-16. At a minimum, Mr. Camarca's ability to comply is disputed and is a better question for a jury rather than a dismissal. Id.

While body camera footage shows Defendant Woodward and Christen's view of the takedown and handcuffing, the inherent gaps of Mr. Camarca's perspective are filled from Mr. Camarca's deposition testimony. Mr. Camarca asserts that from the moment he was tackled to the ground, landing on his elbows, that he "was in a lot of pain." Camarca Depo., R. 41, Page ID# 457. Mr. Camarca describes his actions during the takedown as "scared." Id. at 79. As the district court ignores Mr. Camarca's perspective, Mr. Camarca describes his movements on the ground as him "attempting to squirm because [his] leg was in pain" and not resistive. Id. When reviewing the body camera footage, Mr. Camarca's testimony is only corroborated.

When appropriately viewing the body camera footage in the light as depicted by the videotapes with any gaps being filled in favor of Mr. Camarca, the body camera footage shows that Mr. Camarca was attempting to hold onto Defendant Christens' arms as an attempt to submit and gain his balance as Defendant

Woodward had just slammed him in the wall and was in the process of tackling him to the ground. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:25. As Mr. Camarca could not get balanced, one can clearly see Mr. Camarca put both of his hands up in a 'surrendering' position. R. 56, Pl. Ex. 4, at 03:34:25. A reasonable jury could conclude that Mr. Camarca's actions indicted his attempt to submit. See Shumate, 44 F.4th 427, 448 (finding the plaintiff's physical behavior of lying prone as an indication of submission and diminishing the reasonableness of future uses of force). Mr. Camarca can be seen attempting to 'surrender'—putting his hands up in that same position—for a second time before Defendant Christen can be seen grabbing and pulling up on Mr. Camarca's left forearm. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:27. This further prevented Mr. Camarca from compliance as Defendant Woodward was actively pulling his body down in the opposite direction. For a third time, Mr. Camarca can be seen attempting to 'surrender' when he is pulled upwards on his knees in a chokehold by Defendant Woodward. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:31. As this pattern has been made evident, Mr. Camarca's third 'surrender' attempt is ignored as Defendant Christen grabs the back of Mr. Camarca's head and pushes his face to the floor in the opposite direction that Officer Woodward was just pulling him in the chokehold. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:32.

Although Mr. Camarca attempted to 'surrender' three times and his compliance was made impossible by the Defendants' increased use of force, the district court ignored these details and summarily described Mr. Camarca's movements as "resisting" in just one conclusory sentence. District Opinion, R. 60, Page ID# 1347. Like the <u>Shumate</u> court found, this Court must now find that Mr. Camarca has presented sufficient evidence to find that Mr. Camarca's actions did not "bore the hallmarks of active resistance." <u>Eldridge v. City of Warren</u>, 533 F. App'x 529, 533 (6th Cir. 2013). When viewing the facts in the light most favorable to Mr. Camarca, a reasonable jury could find that Mr. Camarca did not actively resist arrest as his physical movements can be seen as attempts to submit or, at the very least, mere passive, non-hostile resistance. See <u>King</u>, 97 F.4th at 396-97 (deeming that turning one's body away from the officer is not active resistance and a jury could reasonably find that one putting their hands behind their back before takedown indicates compliance); <u>La Plante v. City of Battle Creek</u>, 30 F.4th 572, 580-81 (6th Cir. 2022) (finding that a reasonable jury could find plaintiff's lifting of his hands in the air as the officer attempted to handcuff him to signify surrender rather than noncompliance); <u>Sevenski v. Artfitch</u>, Nos. 21-1391/1402, 2022 U.S. App. LEXIS 20108, at *4-5 (6th Cir. July 20, 2022) (deeming takedown excessive where, under plaintiff's version of events, plaintiff held his hands above his head and merely failed to comply with command to return to his vehicle before takedown). To add onto

Defendant Woodward and Christen's clear excessive force, similarly to the plaintiff in Osborn, Mr. Camarca was at no point made aware as to why he was being detained, arrested, or what triggered the uses of force. See Osborn, 2023 U.S. App. LEXIS 6264, at *13. This severely diminishes the Defendants' unfounded claims of Mr. Camarca's defiance as there was nothing for him to comply to. See Shumate, 44 F4th at 449.

Mr. Camarca's verbal remarks offer no more support for the Defendants' force as his rude remarks are absent any conscious resistive acts. See Eldridge, 533 Fed. Appx. at 534-35 (finding that a plaintiff actively resists only when his verbal threats were part of a series of clear, conscious resistive acts). This weighs the third Graham factor against the reasonableness of Defendant Woodward's takedown of Mr. Camarca and the subsequent uses of force by both Defendant Woodward and Christen on the floor.

When viewing the facts in the light most favorable to Mr. Camarca, the Graham analysis leads this Court to the conclusion that Defendant Woodward and Christen's uses of force were not objectively reasonable. Given that Mr. Camarca had not been told he was under arrest and attempted to surrender at least three times—one instance occurring just before the takedown—and was subsequently subjected to the unprovoked tackle by Defendant Woodward, the pulling of his forearm by Defendant Christen, the chokehold by Defendant Woodward, the

pushing of his face to the floor by Defendant Christen, and the constant pressure of the Defendants' body on top of his all while enduring intense pain due to his injured leg, the Defendants' use of force cannot be seen as objectively reasonable. Evidently, the district court erred when holding that that Defendant Woodward and Christen acted reasonably as a matter of law and that no genuine dispute of material fact exists with respect to this segment. Because of this, this Court must reverse the district court's order granting summary judgment on Mr. Camaca's §1983 claim of excessive force.

> **3.** **Defendant Woodward's Throwing a Compliant And Injured Mr. Camarca Head-First to The Wall Constitutes Excessive Force.**

When analyzing the third segment of force in this case, the evaluation of the first <u>Graham</u> factor remains the same: it is undisputed that the first <u>Graham</u> factor weighs against the reasonableness of Defendant Woodward throwing of Mr. Camarca as Mr. Camarca's alleged crimes were very low in severity. Additionally, as the district court was silent on the second and third <u>Graham</u> factors for this segment, but it is important to note that Mr. Camarca was handcuffed, not resisting, and fully in the Defendants' control. The district court, when denying the Defendant's use of excessive force in this segment, instead attacks Mr. Camarca's testimony and ignores the body camera footage that clearly supports his claim.

Defendant Woodward was pulling up on Mr. Camarca's left, handcuffed arm in an attempt to stand him up. Christen BWC, R. 56-4, Page ID# 1247, at 03:35:36. At this point in time, Mr. Camarca's severely injured leg was obvious and was even visible multiple times on body camera footage: when Mr. Camarca is laying handcuffed on the floor (Defendant Christen can even be seen on Defendant Mathews body camera footage looking at Mr. Camarca's injured leg); when Defendant Mathews arrests Sara Camarca; when Defendant Woodward sits Mr. Camarca up; and when Defendant Woodward pulled Mr. Camarca upwards to stand him up. Mathews BWC, R. 56-6, Page ID# 1249, at 03:34:48 to 03:35:24, 03:35:40; Christen BWC, R. 56-4, Page ID# 1247, at 3:35:27. Despite Mr. Camarca's obvious injury, Officer Woodward then threw Mr. Camarca to the nearby wall and tile floor head-first. Camarca Depo., R. 41, Page ID# 468; Christen BWC, R. 56-4, Page ID# 1247, at 03:35:39; Morris BWC, R. 56-5, Page ID# 1248, at 03:35:40; Mathews BWC, R. 56-6, Page ID# 1249, at 03:35:41; Woodward BWC, R. 56-3, Page ID# 1246, at 03:35:41.

The facts are so contrary to the district court's finding that Defendant Woodward just "lose[s] his grip" while "Camarca falls." District Opinion, R. 60, Page ID# 1349. The body camera footage depicting this event shows Defendant Woodward's arm fling upwards as he deliberately chooses to throw Mr. Camarca out of his grip. Mr. Camarca's assertions are also corroborated by Sara Camarca as

she says "hey! You can't throw him around" immediately after the event. Mathews BWC, R. 56-6, Page ID# 1249, at 03:35:43. To add to the egregious behavior of Defendants, on body camera footage, one can see Defendant Woodward look up and smirk at Defendant Morris after he threw Mr. Camarca to the wall. Morris BWC, R. 56-5, Page ID# 1248, at 03:35:43.

While the district court ignores all evidence available besides the Defendants' testimony of events, the body camera footage viewed in the light depicted by the videotape show Defendant Woodward intentionally throwing a compliant, handcuffed, and injured Mr. Camarca to the wall and tile floor. Whether Defendant Woodward's action is called a throw, fling, or toss, it is very clearly an intentional and malicious excessive force inflicted on a non-resistive, handcuffed man. While the district court also relies on <u>Vanpelt</u> to establish that a mere release of an officer's grip is not excessive force, the release of grip discussed in <u>Vanpelt</u> was described by that court as the officer "lowering him to the ground." <u>Vanpelt v. City of Detroit</u>, 70 F.4th 338, 341 (6th Cir. 2023). Comparing Vanpelt's facts to Mr. Camarca's is highly inappropriate as Mr. Camarca's facts show much more than a mere lowering to the ground. At a minimum, whether Defendant Woodward threw Mr. Camarca to the wall and tile floor is a genuine dispute of material fact that is better suited for a jury to consider. Therefore, the district court erred when holding that that Defendant Woodward acted reasonably as a matter of law and that no genuine dispute of

material fact exists with respect to this segment. Because of this, this Court must reverse the district court's order granting summary judgment on Mr. Camaca's §1983 claim of excessive force.

**4. Defendants Woodward and Christen Forcing Mr. Camarca to Walk And Hop With His Injured Leg While Being Told of His Injury Constitutes Excessive Force.**

When analyzing the fourth segment of force in this case, the evaluation of the first <u>Graham</u> factor remains the same: it is undisputed that the first <u>Graham</u> factor weighs against the reasonableness of Defendant Woodward and Christens' force of Mr. Camarca as Mr. Camarca's alleged crimes were very low in severity. Additionally, as the district court was silent on the second and third <u>Graham</u> factors for this segment, but it is important to note that Mr. Camarca was handcuffed, not resisting, and fully in the Defendants' control. The district court attributes its dismissal of Mr. Camarca's claims by simply saying that it is "unlike… a typical excessive force claim." District Opinion, R. 60, Page ID# 1349.

Mr. Camarca was forcibly dragged out of the building by Defendant Woodward and Christen after several indications and verbal warnings that Mr. Camarca's leg was broken; the best view of this comes from Defendant Morris's body camera footage which shows neither Defendant Woodward nor Christen providing physical support to bring Mr. Camarca up off of his injured leg after he is forced to stand, but rather show them pulling/dragging him forward without care for

his injuries. Morris BWC, R. 56-5, Page ID# 1248, at 03:36:33 to 03:36:53. In <u>Ontha v. Rutherford County</u>, the court found that an officer pulling an already injured person to the side of the road required a denial of qualified immunity to the plaintiff's excessive force claim. <u>Ontha v. Rutherford County</u>, 222 Fed. Appx. 498, 507-08 (6th Cir. 2007); <u>See</u> <u>also</u> <u>Darnell v. Caver</u>, No. 97-5297, 1998 U.S. App. LEXIS 15390 (6th Cir. 1998) (finding that after suspect was thrown to ground, it was unreasonable for officer to lift suspect's head and let it drop to pavement). Like <u>Ontha</u>, Defendants Woodward and Christen's pulling Mr. Camarca to stand up on his injured leg and then proceeding to drag him out of the building ignoring the injury they could have been causing constitutes force that officers should know is objectively unreasonable.

The district court also erred when pointing to a lack of *de minimis* physical injury to dismiss the Defendant's excessive force used against Mr. Camarca. District Opinion, R. 60, Page ID# 1349-50. However, <u>Ontha</u> makes clear that a plaintiff's "holler" and "moan" in pain during the event precludes the court from summarily deciding that physical injury did not occur; even when the plaintiff was already injured before the event. <u>Ontha</u>, 222 Fed. Appx. at 508. Similarly, Mr. Camarca indicated eight separate times before his forcible dragging that his leg was broken. Christen BWC, R. 56-4, Page ID# 1247, at 03:35:41, 03:35:43, 03:35:45, 03:35:54, 03:36:03, 03:35:16, 03:36:27, 03:36:32. When force to stand up by Defendants Woodward and Christen, Mr. Camarca then exclaims, "I can't step on it… what are

you doing?" Christen BWC, R. 56-4, Page ID# 1247, at 03:36:32. Mr. Camarca received no replies from Defendants and was just continuously dragged along. Christen BWC, R. 56-4, Page ID# 1247, at 03:36:35 to 03:36:55.

The several indications of injury and pain should have been acknowledged and prevented, but instead, the Defendants chose to force Mr. Camarca stand on both feet, watch him buckle and exclaim about his injury, and then drag him out of the building. This is clear unreasonable use of force. Therefore, the district court erred when holding that that Defendant Woodward and Defendant Christen acted reasonably as a matter of law and that no genuine dispute of material fact exists with respect to this segment. Because of this, this Court must reverse the district court's order granting summary judgment on Mr. Camaca's §1983 claim of excessive force.

### C. **Defendants Gilliland, Morris, And Mathews Failed to Intervene in Defendant Woodward And Christens' Unlawful Detention, Arrest, And Excessive Force.**

When reviewing Mr. Camarca's §1983 claims against Defendants Gilliland, Morris, and Mathews, they admittedly did not physically assault Mr. Camarca like Defendants Woodward and Christen. However, the behavior of Defendants Gilliland, Morris, and Mathews is equally culpable as they have a duty to intervene in the situation and protect Mr. Camarca from the various violations of his constitutional rights. Police officers have a duty to step up if they witness another officer engaging in inappropriate, unlawful and questionable behavior, and they all

failed to do so. See Kowolenek v. Moore, No. 10-5398, 2012 U.S. App. LEXIS 3843 (6th Cir. February 23, 2012); Jacobs v. Vill. Of Ottawa Hills, 5 F. App'x 390, 395 (6th Cir. 2001) (holding that police officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights).

By the time Defendants Morris and Mathews were on scene, they both witnessed and had ample opportunity to intervene in Defendant Woodward's and Christen's constitutional violations. For example, Defendant Morris can be seen just standing and observing the events with no intervention for several minutes. Mathews BWC, R. 56-6, Page ID# 1249, at 03:35:15 to 03:35:53; Morris BWC, R. 56-5, Page ID# 1248, at 03:35:53 to 03:36:52. One can even see Defendant Morris look up to the ceiling and blow out a deep breath as if he is annoyed that he must be there doing his job. Mathews BWC, R. 56-6, Page ID# 1249, at 03:35:49. Additionally, Defendant Gilliland, who was the supervisor on duty, should have done more than simply stand around, look at everyone, and laugh when discussing the direness of Mr. Camarca's situation with the other officers.

Therefore, the district court erred when holding that that Defendants Gilliland, Morris, and Mathews did not have a duty to intervene in Defendant Woodward's and Christen's continual violations of Mr. Camarca's constitutional rights and that no genuine dispute of material fact exists. Because of this, this Court must reverse

the district court's order granting summary judgment on Mr. Camaca's §1983 claims against Defendants Gilliland, Morris, and Mathews.

## D. Defendant Officers Denied Plaintiff of His Right to Equal Protection And Due Process of The Law.

When reviewing Mr. Camarca's claim against the Defendant Officers that he was deprived of the right to equal protection and due process of law, Mr. Camarca must show that (1) that the government treated him disparately as compared to similarly situated persons, and (2) that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. See Center for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365 (6th Cir. 2011). Based on the body camera footage, several individuals present at the hotel acted in similar ways; one person in particular being Mr. Camarca's wife, Sara. Like Mr. Camarca, Sara was verbally rude to Defendant Woodward at their initial interactions when she said, "no, he was rude for saying it" in response to Defendant Woodward's comment to "beat it" and "this doesn't concern you." Woodward BWC, R. 56-3, Page ID# 1246, at 03:34:13. Like Camarca did with Sara, Sara attempted to grab Mr. Camarca while he was talking to Defendant Woodward. Christen BWC, R. 56-4, Page ID# 1247, at 03:34:22. However, despite the 911 call being partially about Sara's conduct, Mr. Camarca was the individual that was targeted by Defendant Woodward and subsequently all other Defendant Officers' to receive such disparate treatment. No other individual in the hotel lobby that night received any injuries by the hands of

Defendant Officers. Clearly, there was no rational basis to treat Mr. Camarca any differently than his family and friends who were all situated similarly to him.

Therefore, the district court erred when finding that there is no genuine dispute of material facts as to Mr. Camarca's equal protection claim. This Court must reverse the district order granting summary judgment on Mr. Camarca's equal protection claim.

### E. Defendant Officers Are Not Shielded by Qualified Immunity.

Under the doctrine of qualified immunity, police officers are shielded from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Jerauld ex rel. Robinson v. Carl, 405 F. App'x 970, 975 (6th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether the Defendant Officers in this case are entitled to qualified immunity, the Court must examine (1) whether the Plaintiff has alleged facts which, when taken in the light most favorable to the Plaintiff, show that the Defendant Officers' conduct violated a constitutionally protected right, and (2) whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood this his behavior violated that right. See Jerauld, supra at 475; See Also Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001).

Mr. Camarca has already presented the sufficient evidence to show the Defendant Officers' multiple violations of his constitutional rights demanded by prong (1). When examining whether the rights violated were clearly established, Mr. Camarca points to several cases which encompass similar facts as to give fair warning that the Defendants' conduct was unconstitutional. However, it is noted that Mr. Camarca need not put forth "a case directly on point" to show that his claimed rights were indeed clearly established at the time of the conduct. Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 7 (2021) (per curiam).

A reasonable jury could conclude that Mr. Camarca's seizure and subsequent violent arrest without a showing of physical threat or force was unlawful. See Harris v. Langley, 647 F. App'x 585, 590 (6th Cir. 2016) (Finding that there is no opacity in the Fourth Amendment's prohibition on unprovoked body slams from police officers, whether this exact scenario has been held unlawful in a previous decision or not).

A reasonable jury could conclude that Mr. Camarca was not actively resisting when he was slammed against the wall and that Defendant Woodward's subsequent takedown was excessive. See Smoak v. Hall, 460 F.3d 768, 784 (6th Cir. 2006) (holding that takedown maneuvers are excessive when officers deal with a generally compliant suspect, and that the police may not use physical force against a subdued, non-resisting subject); Lawler v. City of Taylor, 268 F. App'x 384, 387 (6th Cir.

2008) (denying qualified immunity where video footage would permit a jury to conclude that an officer's use of force in throwing a suspect to the floor was disproportionate where the suspect had merely insulted an officer, refused to comply with orders, and continually raised his hand).

A reasonable jury could also conclude that Defendant Woodward's and Christen's force applied during the takedown and handcuffing, Defendant Woodward's throwing of Mr. Camarca into the wall and tile floor while he was compliant and handcuffed, and the subsequent dragging out of the building as excessive. Existing law at the time of Mr. Camarca's detainment and arrest made clear that an officer could not throw down a generally cooperative handcuffed arrestee who briefly ignores a lawful order, at least when that arrestee does not resist arrest and poses no risk of violence or escape. See Kijowski v. City of Niles, 372 F. App'x 595, 601 (6th Cir. 2010) (holding that the right to be free from physical force when one is not resisting the police is a clearly established right); Harris v. City of Circleville, 583 F.3d 356 (6th Cir. 2009) (holding an officer's takedown as excessive when the plaintiff was handcuffed and not actively resisting or posing any threat of violence); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994) (continuing to spray mace on an incapacitated suspect is objectively unreasonable force); McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988) (inflicting totally gratuitous blow to the

ribs of a handcuffed suspect who was not trying to escape is objectively unreasonable).

Because the Defendant Officers were had "fair warning that their alleged treatment of [a plaintiff] was unconstitutional," the Defendant Officers are not entitled to qualified immunity. Hope v. Pelzer, 536 U.S. 730, 741 (2002). The district court erred when finding that the Defendant Officers were entitled to qualified immunity with respect to Mr. Camarca's §1983 claims against those Defendants, and therefore this Court must now reverse this finding.

## II.   **THE DISTRICT COURT ERRED WHEN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S § 1983 CLAIMS AGAINST THE DEFENDANT CITY AND OFFICERS IN THEIR OFFICIAL CAPACITY.**

Under Monell and its progeny, "a municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 387 (6th Cir. 2014) (quoting Monell, 436 U.S. at 692). This liability extends to municipal officers in their official capacity, including police officers in their official capacity. See Coley v. Lucas County, 799 F.3d 530 (6th Cir. 2015). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact"; this is shown by

proving that "(1) the training or supervision was inadequate for the tasks performed;
(2) the inadequacy was the result of the municipality's deliberate indifference; and
(3) the inadequacy was closely related to or actually caused the injury." City of
Canton, Ohio, 489 U.S. at 388; Ellis ex rel. Pendergrass v. Cleveland Mun. Sch.
Dist., 455 F.3d 690, 700 (6th Cir. 2006).

Expert deposition testimony from Dr. Stiehm clearly provided evidence of
prong one, inadequate training for the tasks performed, or, at a minimum, that this
material fact is in dispute: "there was gaps in time in officers' personnel files as to
when they received annual training. In their personnel policies manual, it says, shall
receive annual training. In at least two of the officers', there were deficiencies in
certifications, testings, and things like that." Dr. Stiehm Depo., R. 44, Page ID# 638.
These gaps in training also support the finding that the City of Covington failed to
"equip law enforcement officers with specific tools to handle recurring situations"
as Defendant Woodward described responding to these types of calls being an
"average night," while "nothing stands out one way or the other" about the night to
Defendant Christen. Ouza v. City of Dearborn Heights, Michigan, 969 F.3d 265, 287
(6th Cir. 2020) (holding that deliberate indifference can be shown by failing to equip
law enforcement officers with specific tools to handle recurring situations);
Woodward Depo., R. 45, Page ID# 725; Christen Depo., R. 46, Page ID# 835.
Finally, it is not in dispute that Mr. Camarca's broken tibia, broken fibula, and

shattered ankle were caused by the Defendants' uses of force inflicted on Mr. Camarca during an attempt to detain and arrest him. Mr. Camarca's injuries are closely related to the gaps in training present.

Because Mr. Camarca has provided sufficient evidence to show that the failure to train these Covington police officers amounted to deliberate indifference to the rights of Mr. Camarca, this Court must reverse the district court's order granting summary judgment on Mr. Camaca's §1983 claims against the Defendant City and the Defendant Officers in their official capacity.

## III.    THE DISTRICT COURT ERRED WHEN GRANTING SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS.

Mr. Camarca is clearly entitled as a matter of law to have his state-law claims of assault and battery, intentional infliction of emotional distress, and punitive damages heard in conjunction with his claims for the violation of his constitutional rights under § 1983. This Court has mandatory jurisdiction over the Mr. Camarca's state-law claims pursuant to 28 U.S.C. § 1387. The Sixth Circuit has held that KRS 503.090 permits only the use of "less than excessive" force. <u>Browning</u> 18 F.4th at 531 (quoting <u>Brown v. Fournier</u>, No. 2015-CA-001429-MR, 2017 Ky. App. Unpub. LEXIS 705,  at *4 (Ky. App. June 2, 2017)). Having established the violation of his constitutional rights, including the use of excessive force, by the Defendant Officers or at least a question of fact as to whether his constitutional rights were violated by

the Defendant Officers, Mr. Camarca is entitled to have those state-law claims heard by a jury.

## CONCLUSION

For the reasons set forth above, the Appellant, Anthony Camarca, urges the Court to reverse the district court's order granting the Defendants' Motion for Summary Judgment as there are clearly genuine factual issues and proof of the Defendant Officers' excessive, unlawful, and inappropriate use force in the detention and arrest of the Mr. Camarca. Mr. Camarca also urges the Court to reverse the district court's order denying the Defendants' Motion to Exclude as moot. Mr. Camarca has established that there are genuine issues of material fact in this case, and therefore respectfully submits that he should be permitted to proceed to a jury trial on all of his claims against the Defendants named herein.

*/s/ Donald L. Nageleisen*
Donald L. Nageleisen, Esq.
2216 Dixie Highway, Suite 203
Fort Mitchell, Kentucky 41017
(859) 491-8887
dlnlegalmail@yahoo.com
*Counsel for Appellant, Anthony Camarca*

## CERTIFICATE OF COMPLIANCE

This Appellant brief complies with the type-volume limitation in FRAP 32(a)(7) because it contains 12,692 words. This Appellant brief also complies with the type-face requirements of FRAP 32(a)(4), (5), and (6) because it has been prepared in 14- point Times New Roman font using Microsoft Word.

*/s/ Donald L. Nageleisen*
Donald L. Nageleisen, Esq.


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of August, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Defendants' counsel of record.

*/s/ Donald L. Nageleisen*
Donald L. Nageleisen, Esq.

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Docket # | Description | Page ID# |
|---|---|---|
| 1 | Complaint | 1-13 |
| 9 | Answer to Complaint | 71-78 |
| 37 | Motion to Exclude Plaintiff's Expert | 139-170 |
| 38 | Motion for Summary Judgment | 292-336 |
| 41 | Deposition Transcript of Anthony Camarca | 380-492 |
| 42 | Deposition Transcript of Charles Cummins | 493-534 |
| 43 | Deposition Transcript of Lacey Cummins | 535-568 |
| 44 | Deposition Transcript of Dr. Stiehm | 569-700 |
| 45 | Deposition Transcript of Ross Woodward | 701-817 |
| 46 | Deposition Transcript of Ryan Christen | 818-895 |
| 47 | Deposition Transcript of Sara Camarca | 896-953 |
| 54 | Plaintiff's Response to Motion to Exclude | 963-972 |
| 55 | Deposition Transcript of Jack Ryan | 1025-1143 |
| 56 | Plaintiff's Response to Motion for Summary Judgment | 1219-1243 |
| 56-1 | 911 Audio | 1244 |
| 56-2 | Marriott Video | 1245 |
| 56-3 | Woodward BWC | 1246 |
| 56-4 | Christen BWC | 1247 |
| 56-5 | Morris BWC | 1248 |
| 56-6 | Mathews BWC | 1249 |
| 56-7 | Gilliland BWC | 1250 |
| 56-8 | Dr. Stiehm Report | 1251-1279 |
| 56-9 | Covington, KY Police General Orders | 1280-1286 |
| 56-10 | Covington, KY Police Use of Force Standards | 1287-1314 |
| 58 | Reply to Response to Motion for Summary Judgment | 1315-1329 |
| 59 | Reply to Response to Motion to Exclude | 1330-1337 |
| 60 | Memorandum Opinion and Order | 1338-1356 |
| 61 | Judgment | 1357 |
| 63 | Notice of Appeal | 1363 |